UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


ZURICH AMERICAN
 INSURANCE COMPANY,

    Plaintiff,

v.                                                      CASE NO. 8:14-cv-775-T-23AAS

STAFFING CONCEPTS
NATIONAL, INC., et al.,

    Defendants.
_____/

**<u>ORDER</u>**

     In April 2014 Zurich sued seventeen defendants for breaching twenty-one insurance policies. Each policy covers workers' compensation claims between March 1, 2011, and March 1, 2012. Under a "large-deductible endorsement" to each policy, Zurich agrees to pay a claim, and the insured agrees to reimburse Zurich for the deductible up to $2 million. Because the policies unambiguously obligate the defendants to reimburse Zurich for a claim up to $2 million, three orders (Docs. 119, 122, and 124) grant summary judgment for Zurich on liability. A June 2017 jury trial on damages yielded a $9.1 million award for Zurich.

Identifying half a dozen purported errors in the summary-judgment orders and the trial, the LRA defendants[1] and G&S Leasing move (Docs. 184 and 185) for judgment as a matter of law or alternatively for a new trial. Also, Zurich moves (Doc. 192) for costs and pre-judgment interest.

**I. Motions for judgment as a matter of law or for a new trial**

**A. Subject-matter jurisdiction**

Ten days before the trial, the defendants moved (Doc. 155) to dismiss for lack of subject-matter jurisdiction and argued that the defendants' belated attempt to invoke a purported administrative remedy divested subject-matter jurisdiction. A June 12 order (Doc. 156) denies the motion. The LRA defendants and G&S Leasing repeat the arguments in the unsuccessful motion to dismiss. For the reasons explained in the June 12 order (Doc. 156), the defendants' argument fails.

**B. "Collateral" or "set-off"**

The defendants claim as error the exclusion of testimony about the "collateral" or the "collateral setoff." Rather than pay Zurich directly, the defendants remitted money to a third party, PMSG,[2] which "managed the operations" for the defendants and for several companies not a party to this action. (Opferman, Tr. Vol. IV at 10–11 and 14–15) In addition to contracting with Zurich on the defendants' behalf, PMSG

---

[1] Leasing Resources of America 2, Inc.; Leasing Resources of America 3, Inc.; Leasing Resources of America 4, Inc.; LRA Global HR, Inc.; and LRA HR Outsourcing, Inc.

[2] PMSG occasionally appears in the record as "Professional Management Group," "Professional Management Service Group," or "PMG."

- 2 -

contracted with Zurich on behalf of the non-parties,[3] one of which owed Zurich at least several million dollars. (Opferman, Tr. Vol. IV at 41)

The defendants proffered testimony from Daniel Opferman, the former vice-president of operations for PMSG, that PMSG deposited $22,135,675 in a trust. (Tr. Vol. IV at 25) Also, PMSG paid into escrow $200,000 and posted (purportedly on the defendants' behalf) a $2,500,000 letter of credit. According to Opferman, PMSG posted as collateral a total of $24,835,675, but no collateral remains. (Tr. Vol. IV at 25 and 32) The defendants argue that the collateral posted by PMSG reduces or eliminates the defendants' debt for the 2011–2012 claims and that the jury could properly consider testimony about the collateral.

As explained above, a non-party company owned by Hendry Hardin and managed by PMSG owed Zurich money under pre-2011 policies. (Tr. Vol. IV at 37–38) Opferman testified that the parties agreed that Zurich could apply the collateral in PMSG's trust to the non-party's pre-2011 debt. (Tr. Vol. IV at 33–38) In accord with the parties' agreement,[4] Zurich applied the collateral to the pre-2011 debt. (Opferman, Tr. Vol. IV at 37–38) Opferman, who could identify no error in Zurich's applying the collateral to the pre-2011 debt, stated that he knew about

---

[3] Henry Hardin owns the SCI defendants and several of the third parties; Henry's brother, John, owns the LRA defendants.

[4] Although the witnesses and the counsel frequently discuss this "standstill agreement," the agreement appears nowhere in the present record.

- 3 -

nothing that required Zurich's applying the collateral to the defendants' 2011–2012 debt. (Tr. Vol. IV at 36–39)

The proffered testimony about the "collateral" or the "setoff" warranted exclusion. Testimony about money withdrawn from a third party's trust and applied — with the parties' agreement and without the defendants' timely objection — to another debt could not aid the jury's determination of damages caused by the defendants' failure to reimburse Zurich for the 2011–2012 debt. Even if relevant, the testimony risked confusing the jury with an erroneous belief that the defendants reimbursed through the third party's trust the same money over which Zurich sues in this action. Although the defendants undoubtedly prefer that the jury credit the defendants for the money in PMSG's trust, the defendants could identify at trial nothing that obligated Zurich to apply the collateral to the 2011–2012 debt. Absent evidence that connected the collateral to the 2011–2012 debt, testimony about the collateral remained both irrelevant and highly likely to unduly distract, mislead, and confuse the jury.

Two points about the collateral warrant brief attention. First, the defendants cite the testimony of Opferman and Zurich underwriter March Bashore and argue that the parties "intended" that the collateral satisfy the 2011–2012 debt. But Bashore's proffered testimony (Tr. Vol. III at 185–238) neither mentions the pre-2011 debt nor contemplates the effect of the "standstill agreement" on the collateral. In any event, one underwriter's subjective characterization of the "intent," "purpose,"

or "intended function" of the collateral cannot absolve the defendants of the reimbursement obligation. Second, the defendants argue that Zurich failed to identify the account or debt to which Zurich applied the collateral. For example, the LRA defendants assert that the defendants "had every equitable right to tell the jury they paid substantial collateral to Zurich . . . and to insist to the jury that Zurich account for where that collateral went." (Doc. 185 at 21) But the defendants' failure to counterclaim for an accounting prevents success on that argument (or on several "accounting" variants that appear throughout the record).

**C. Who is "you"?**

An endorsement representative of the twenty-one policies provides that "You agree to reimburse us" for up to $2 million per claim. (Doc. 165-1 at 93) The defendants argue (Doc. 185 at 5–15) for the first time that uncertainty about the word "you" renders each endorsement fatally ambiguous.

The argument fails for at least three reasons. First, the defendants could have asserted but failed to assert the argument (or one "closely related") before the judgment. A party cannot successfully invoke Rules 50(b) or 59(e), Federal Rules of Civil Procedure, to assert an argument not raised before the judgment. *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1289–90 (11th Cir. 1998) (applying Rule 50(b)); *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998) ("The purpose of a Rule 59(e) motion is not to raise an argument that was previously available, but not pressed."). Second, even if timely, the argument fails because each endorsement unambiguously

establishes the defendants' liability. The convoluted argument about the meaning of "you" lacks merit. Third, the endorsements provide that "[e]ach Named Insured is jointly and severally liable for all deductible amounts under this policy." (E.g., Doc. 165-1 at 96) A "named insured schedule" identifies the named insureds to each policy. (E.g., Doc. 165-1 at 42) Even if "you" refers only to the named insured at the top of the endorsement, the joint-and-several liability provision subjects to liability each named insured to a policy.

### D. Monthly invoices

The LRA defendants argue that Zurich failed to satisfy a "condition precedent" to the defendants' obligation to reimburse Zurich. An endorsement representative of the twenty-one policies provides:

> D. Conditions
> . . .
> 2. Cancellation
> You must promptly pay us all amounts for which you are responsible under this endorsement upon receipt of a billing from us. If you fail to do so, we will cancel this deductible endorsement . . .

(Doc. 165-1 at 94) Zurich employee Michael Hayden could not recall whether Zurich sent a bill to each defendant every month. (Tr. Vol. II at 219) The defendants argue in effect that the paucity of evidence that Zurich sent an invoice every month to every defendant extinguishes the reimbursement obligation.

The argument fails for at least three reasons. First, Florida law disfavors a condition precedent; the judiciary will discern a condition precedent only if "required

- 6 -

to do so by plain, unambiguous language or by necessary implication." *In re Estate of Boyar*, 592 So. 2d 341, 343 (Fla. 4th DCA 1992) (per curiam). The provision, which appears in the subsection "Cancellation" under the section "Conditions," informs an insured that Zurich will cancel the endorsement if the insured fails to pay promptly. Elsewhere in each endorsement, an insured agrees to reimburse Zurich for a claim up to $2 million, and no provision "unambiguously" or "necessar[il]y" conditions the defendants' obligation to reimburse Zurich on Zurich's mailing (monthly or otherwise) the defendants an invoice.

Second, even if the phrase "upon receipt of a billing" amounts to a condition precedent, the evidence showed that the defendants directed Zurich to send the invoices to PMSG. Zurich employee Bo Gurksy testified that Zurich sent the invoices to PMSG in accord with "our instructions under the policy." (Tr. Vol. III at 158) Consistent with Gursky's testimony, Operferman explained that PMSG "managed the [defendants'] operations" and acted as an intermediary between Zurich and the defendants. Because the defendants elected that PMSG receive the invoices in the defendants' behalf, the defendants cannot successfully challenge Zurich's sending the invoices to PMSG rather than to the defendants.

Third, even if a provision requires that Zurich bill the defendants before attempting to collect a debt, the evidence showed that Zurich billed the defendants. Gursky testified that in 2014 he sent each defendant a demand letter and attached to the letter each overdue bill. (Tr. Vol. III at 121, 145–46) The defendants emphasize

that Zurich failed to send each defendant an invoice every month, but the defendants cite no policy provision that requires the regular or prompt mailing of an invoice.[5] On the contrary, although the quoted provision conspicuously requires that an insured "promptly" reimburse Zurich, the provision says nothing about the time within which Zurich must send the invoice.

### E. The administrative code

The LRA defendants argue:

> LRA pled the affirmative defense that [Zurich] failed to comply with regulatory and statutory requirements, and specifically that it failed to properly maintain a program to evaluate the ability of those Defendants to pay losses within the $2 million deductible. [Zurich] failed to present any evidence on that issue on summary judgment, and that issue was never resolved in favor of Plaintiff in any of the evidence. . . Defendants should have been permitted to present this defense to the jury . . .

(Doc. 185 at 4–5)

The argument fails for at least two reasons. First, as Zurich correctly recognized in the motion for summary judgment, the defendants "failed to offer any cognizable legal theory as to how the alleged failure to comply with the Administrative Code would somehow excuse their deductible obligations." (Doc. 64 at 9–10) Second, even if the purported failure to comply with the administrative code constitutes an affirmative defense, Zurich moved for summary judgment on the issue

---

[5] The LRA defendants cite a provision in a separate agreement (Doc. 185 at 11–15, which mentions the "Program Agreement" and the "Specifications"), but in this action Zurich concededly sues only over the insurance policies.

and cited testimony to refute the "affirmative defense." (Doc. 64 at 9–10) Under Rule 56(c)(1), Zurich's refutation of the "affirmative defense" shifted to the defendants the burden of either proffering evidence to rebut Zurich's argument or explaining why the cited material failed to support Zurich's argument. But the defendants' opposition (Docs. 74 and 75) to summary judgment neither mentions the administrative code nor cites evidence to demonstrate a genuine dispute of material fact about the administrative code, which failure resulted in the granting of summary judgment for Zurich on the issue of liability. Because no genuine dispute of material fact about the administrative code remained for the jury's determination, testimony about the administrative code warranted exclusion.

### F. Admission of the invoices

Finally, the defendants argue that Zurich "failed to lay a proper foundation" for the invoices. For the reasons stated at trial and in Zurich's response (Doc. 200 at 11), the defendants' argument fails.

## II. Motion for costs and pre-judgment interest

Zurich moves (Doc. 179) for costs and pre-judgment interest. Citing 28 U.S.C. § 1920, Zurich requests that the clerk tax $9,318.35 in costs, including several thousand dollars for printing 45,356 documents. The defendants object to $3,628.48 of the requested amount and correctly observe that Zurich fails to explain "what was printed or why those costs were necessary to the litigation." (Doc. 189 at 4) To recover the cost of printing, a party must show "evidence regarding the documents

copied including their use or intended use." *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994). The failure to explain the documents' necessity precludes recovering $3,628.48. Zurich can recover $5,689.87 in costs.

Also, Zurich moves for pre-judgment interest. In response to the defendants' opposition (Doc. 189), which argues that Zurich miscalculated interest, Zurich concedes an error and requests (Doc. 192) "leave to file a corrected" calculation of pre-judgment interest. Construed as a motion for leave to submit an amended motion for pre-judgment interest, the request warrants granting.

## CONCLUSION

The motions (Docs. 184 and 185) for judgment as a matter of law or alternatively for a new trial are **DENIED**. The motion (Doc. 199) for a hearing on Docs. 184 and 185 is **DENIED AS MOOT**. The motion (Doc. 179) for costs and pre-judgment interest is **GRANTED-IN-PART** and **DENIED-IN-PART**. Because Zurich shows an entitlement to $5,689.87 in costs, the clerk is directed to enter judgment in the amount of $5,689.87 for the plaintiff and against the defendants, jointly and severally. The request (Doc. 179 at 2–4) for pre-judgment interest is **DENIED WITHOUT PREJUDICE**, and the construed motion (Doc. 192) for leave to submit an amended motion for pre-judgment interest is **GRANTED**. No later than **NOVEMBER 24, 2017**, Zurich may move for an award of pre-judgment

interest.  G&S Leasing's motions (Docs. 190 and 197) to adopt the LRA defendants' opposition to Docs. 179 and 192 are **GRANTED**.

ORDERED in Tampa, Florida, on November 20, 2017.

*/s/ Steven D. Merryday*
_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE